**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANTONIA ROSARIO, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

R&R 1579 BAKERY CORP.
d/b/a JACQUELINES LOUNGE,
A.B. BAKERY RESTAURANT CORP.
d/b/a JACQUELINE'S BAKERY RESTAURANT,
and REYNALDO BRAVO,

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff ANTONIA ROSARIO, (hereby, "Plaintiff", or "Plaintiff ROSARIO"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, R&R 1579 BAKERY CORP. d/b/a JACQUELINES LOUNGE, A.B. BAKERY RESTAURANT CORP. d/b/a JACQUELINE'S BAKERY RESTAURANT (the "Corporate Defendants"), and REYNALDO BRAVO (the "Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and states as follows:

**INTRODUCTION**

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages and overtime premiums due to improper fixed salary compensation, (2) unpaid wages and commissions due to an unlawful commissions structure, (3) liquidated damages for unpaid wages and commissions, and (4) attorneys' fees and costs.

2. Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages and overtime premiums due to improper fixed salary compensation, (2) unpaid wages and commissions due to an unlawful commissions structure, (3) liquidated damages for unpaid wages and commissions, (4) statutory penalties due to WTPA violations, and (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

5. For all relevant periods, Plaintiff ROSARIO was a resident of Bronx County, New York.

6. Defendants own and operate a restaurant enterprise under the trade name "Jacqueline's", which consists of a bakery and a bar that are located directly next to each other in the Bronx, at the following addresses:

a) Jacqueline's Lounge – 1201 Manor Avenue, Bronx, NY 10472; and

b) Jacqueline's Bakery - 1579 Westchester Avenue, Bronx, NY 10472.

(collectively, the "Restaurants").

7. The Restaurants are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

8. The Restaurants are both under the common control of the Individual Defendant as he is the Owner and Operator of both Restaurants.

9. The Restaurants are located directly next to each other on the same lot. *See* **Exhibit 1**.

10. The Restaurants share the "Jacqueline's" trade name.

11. Defendants interchange supplies, and ingredients (including, but not limited to, ice, water, drink ingredients, and cleaning supplies) between the two Restaurants. Defendants intentionally and specifically purchased two business spaces directly next to each other in order to be able to easily and efficiently execute the transfer of employees and supplies between their two Restaurants, and the successful operations of both Restaurants over the years adequately relied on Defendants' ability to easily perform these transfers (especially so during emergencies, shortages, supply chain disruptions, epidemics, pandemics, and other times of crisis). Throughout Plaintiff's employment, Plaintiff was required to transfer ingredients and supplies between the two Restaurants.

12. The Restaurants share a centralized human resources department that deals with hiring, firing, administering, and managing human relations for both Restaurants' work forces.

13. At all relevant times, all employees of Jacqueline's Lounge, including Plaintiff, were required to go to Jacqueline's Bakery to pick up their weekly wage payments.

14. The Restaurants share identical illegal wage and hour policies, therefore the relevant Corporate Defendants are properly named due to their outstanding liability to the FLSA Collective Plaintiffs and Class Members for whom Plaintiff seeks to represent.

15. Corporate Defendant R&R 1579 BAKERY CORP. d/b/a JACQUELINE'S LOUNGE is a domestic business corporation that operates Jacqueline's Lounge, with an address for service of process and a principal place of business both located at 1201 Manor Avenue, Bronx, New York 10472.

16. Corporate Defendant A.B. BAKERY RESTAURANT CORP. d/b/a JACQUELINE'S BAKERY is a domestic business corporation that operates Jacqueline's Bakery, with an address for service of process and a principal place of business both located at 1579 Westchester Ave, Bronx, NY 10472.

17. Individual Defendant REYNALDO BRAVO is the Owner, Operator, and Principal of both Corporate Defendants. Individual Defendant REYNALDO BRAVO declared himself to be the owner of both Corporate Defendants and Restaurants in a prior action against all three Defendants herein. *See Reyes v. A.B. Bakery Restaurant Corp. et al.*, 1:23-cv-01612 (S.D.N.Y. 2023), Dkt. No. 37, Declaration of Reynaldo Bravo, ¶ 8.

18. At all relevant times, Individual Defendant REYNALDO BRAVO exercised direct and actual functional control and oversight of the business and financial operations, as well as all other general affairs, of both Corporate Defendants.

19. At all relevant times, Individual Defendant REYNALDO BRAVO exercised direct and actual control and oversight of the employment terms and conditions of all of Defendants' employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

20. At all relevant times, Individual Defendant REYNALDO BRAVO exercised (and also delegated to managers and supervisors) the direct and actual power and authority to (i) employ and terminate all employees and managers (including Plaintiff, FLSA Collective Plaintiffs, and Class Members), (ii) determine their hourly rates or salaries, frequencies of payments, and means of payments, (iii) establish, alter, or otherwise affect their work schedules, (iv) otherwise directly or indirectly affect the qualities of their employments, and (v) directly or indirectly maintained their employment records.

21. At all relevant times, Defendant REYNALDO BRAVO ensured the Restaurants operated efficiently and profitably by frequently visiting both Restaurants in order to (i) inspect the operations and quality of food, service, and hygiene of the Restaurants, (ii) meet and confer with the Restaurants' management to discuss operations, sales, and overall status of the Restaurants and their employees, (iii) pick up or drop off supplies, ingredients, or paperwork, (iv) personally supervise employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) and managers and monitor their individual performances of duties and behaviors to ensure they effectively complete their job duties, and (v) directly or indirectly reprimand any employees (including Plaintiff, FLSA Collective Plaintiffs, and Class Members) or managers who did not perform their duties sufficiently or correctly, or displayed inappropriate behavior.

22. At all relevant times, Individual Defendant REYNALDO BRAVO held and exercised direct and actual authority, control, and oversight over all Managers and Supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

23. At all relevant times, employees of the Defendants could complain directly to Individual Defendant REYNALDO BRAVO (either in person or by phone) regarding any of the terms of their employments, and Defendant REYNALDO BRAVO would have the direct and

actual power and authority to immediately effect any changes to the quality and terms of employees' employments to appease their complaints (including, but not limited to, immediately changing their schedules, compensation, locations, positions).

24. At all relevant times, Individual Defendant REYNALDO BRAVO's role and decisions made in connection to his role directly and actually affected the nature, conditions, and circumstances of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' employments.

25. At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

26. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including Cashiers, Cooks, Bartenders, Servers, Counter Staff, Bussers, Bakers, and Dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

28. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs: (1) their proper wages, including their minimum wages and overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' policies of paying employees at a fixed salary, (2) their

proper wages for all hours worked, (3) their proper commissions owed. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

29. FLSA Collective Plaintiffs also include FLSA Sub-collective Plaintiffs who were paid by a "ticket system," as explained below. At all relevant times, Plaintiff and the other FLSA Sub-collective Plaintiffs are and have been subjected to Defendants' unlawful practice of failing to pay: (1) their proper wages, and (2) their commissions. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Sub-collective Plaintiffs.

30. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

31. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including Cashiers, Cooks, Bartenders, Servers, Counter Staff, Bussers, Bakers, and Dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

32. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class also includes a subclass of employees (primarily servers and bartenders) who were denied payment of their promised commissions by Defendants ("Commissioned Subclass"), of which there are also undoubtedly more than forty (40) members. Plaintiff is a member of both of the Class and the Commissioned Subclass.

34. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' (1) failure to pay all wages, including overtime and minimum wages, due to a fixed salary scheme, (2) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (3) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

35. With regard to Plaintiff and the Commissioned Subclass, they are also subject to the same corporate practices of Defendants, as alleged herein, of (1) failing to pay their proper wages, and (2) failing to pay their commissions.

36. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs and classes in wage and hour cases.

37. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members for all hours they worked, including overtime hours;

f) Whether Defendants compensated Plaintiff and Class Members on an illegal fixed salary basis;

g) Whether Defendants paid Plaintiff and Class Members below prevailing minimum wage rates;

h) Whether Defendants paid Plaintiff and Commissioned Subclass Members their owed commissions;

i) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the NYLL; and

j) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

*Plaintiff ROSARIO's Employment Background*

40. In or around May 2024, Plaintiff ROSARIO was hired by Defendants to work as a Server at Jacqueline's Lounge, located at 1201 Manor Avenue, Bronx, NY. In or around March 2025, Plaintiff's employment with Defendants was terminated.

41. Throughout her employment, Plaintiff's primary duties included waiting tables, cleaning tables, and bussing tables.

42. Throughout her employment, Plaintiff ROSARIO was scheduled to work six (6) days a week (Mondays to Saturdays), from 9:00 p.m. to 4:00 a.m. Additionally, Defendants required Plaintiff to stay approximately 30 minutes past the end of her schedule each workday. In total, Plaintiff worked approximately forty-five (45) hours per week. FLSA Collective Plaintiffs and Class Members worked similar schedules.

43. At all relevant times, Plaintiff ROSARIO was compensated by Defendants below the minimum wage, at a fixed salary of $40.00 per day, regardless of the amount of hours Plaintiff worked each workday.

*Unpaid Wages, including Overtime, due to Defendants' Fixed Salary Compensation Policy*

44. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of compensating employees at a fixed salary, in violation of the FLSA and the NYLL.

45. At all relevant times Defendants did not require Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock in or out at the beginnings and ends of their shifts, and intentionally failed to otherwise track their hours worked. Instead, Defendants paid them a fixed daily amount for each shift they worked.

46. Regardless of the total amount of hours Plaintiff ROSARIO worked each workday, Defendants paid her at a fixed rate of $40.00 per shift. Since Defendants required Plaintiff ROSARIO to work for seven and one-half (7.50) hours each day, Defendants' $40 daily rate always equated to an hourly rate of $5.33 per hour ($40 / 7.50). As a result, Defendants always compensated Plaintiff below the prevailing federal and state minimum wage rates at all relevant times.

47. Defendants might argue that Plaintiff's rate was above the federal minimum tip credit wage. However, Defendants are not allowed to deduct any tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) failed to maintain a valid tip pool policy; (iv) failed to provide proper

wage statements clearly indicating tip credit allowance for each pay; (v) failed to maintain any tip records as required by law; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

48. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly subjected to the same fixed salary policies which caused them to be paid below the prevailing federal and state minimum wage rates.

49. At all relevant times, Defendants knowingly and willfully maintained a policy of failing to pay proper minimum wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of compensating these employees at improper fixed salaries, in violation of the FLSA and the NYLL.

50. At all relevant times, Defendants failed to compensate Plaintiff at the statutory rate of time and one-half the regular rate for all hours worked in excess of forty (40) hours each week, in violation of the FLSA and the NYLL. FLSA Collective Plaintiffs and Class Members were also not compensated for their overtime hours at the proper overtime rates.

51. As discussed above, Defendants compensated Plaintiff at an illegal daily fixed salary. As Plaintiff often worked six (6) days a week, he would usually work over forty (40) hours. Defendants compensated Plaintiff at a fixed salary regardless of the hours he worked each week. However, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Therefore, Defendants failed to compensate Plaintiff for all hours he worked in excess of forty (40) hours per workweek, due to a fixed salary. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours and were subjected to

Defendants' practices of failing to compensate employees overtime premiums at one and one-half times their proper regular rate, in violation of the FLSA and the NYLL.

52. Defendants' willfulness here is blatant due to the fact that, despite having already been sued in this Court for substantially the same violation in 2023, Defendants have continued to operate the two Restaurants in the same unlawful manner. *See Reyes v. A.B. Bakery Restaurant Corp. et al.*, 1:23-cv-01612 (S.D.N.Y. 2023). The *Reyes* plaintiff worked for Defendants at Jacqueline's Bakery between 2019 and 2022, and the matter was settled and dismissed in December 2023. Yet, when Defendants hired Plaintiff ROSARIO in May 2024, their unlawful policies were still in effect and remained in effect throughout the entirety of the relevant period.

*Claims of Unpaid Commissions and Wages*

53. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Commissioned Subclass Members their proper commissions and wages for all hours they worked, due to Defendants' unlawful commissions structure, in violation of the FLSA and the NYLL.

54. At all relevant times, Defendants subjected Plaintiff and other Bartenders and Servers (including FLSA Collective Plaintiffs and Commissioned Subclass Members) to an unlawful commissions structure. At all relevant times, Defendants offered these employees a commission of $10.00 for every individual alcoholic drink they sold to a customer (which were referred to as "tickets" by Defendants and the Restaurant's staff). However, if an employee failed to sell 10 tickets throughout any single shift, Defendants did not pay them for any hours or commissions for that shift (including their daily fixed rates).

55. Throughout her employment, Plaintiff ROSARIO would frequently fail to meet Defendants' daily quota of 10 tickets (especially during weeknights). As a result, she would not

receive any compensation for her work performed on these workdays (including commissions for any tickets she *did* sell and her daily fixed salary wages). Therefore, Defendants failed to pay the agreed upon commissions and wages for all the hours Plaintiff worked.

56. Similarly, every time Commissioned Subclass and Commissioned FLSA Collective Plaintiffs did not meet Defendants' daily quota of 10 tickets, Defendants would refuse to pay them any agreed upon commissions or any wages for the hours they worked.

*Claims of WTPA Violations*

57. At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants.

58. At all relevant times, Plaintiff and Class Members were paid in cash daily and did not receive *any* wage statements from Defendants with their daily cash payments.

59. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

60. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees

> could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020).

61. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct directly and actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

62. Had Defendants provided to Plaintiff and Class Members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to reflect their unpaid wages or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the premiums that the employee actually earned. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

63. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

64. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the Plaintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[1]

65. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill.

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

July 8, 2011) (“Under the Social Security statute, entitlement depends on ‘the total of the wages paid . . . to an individual in a calendar year.’”) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

66. “In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). “On the other hand, ‘allegations’ that go ‘beyond asserting a bare statutory violation and sufficiently allege concrete harm’ resulting from ‘the underpayment of wages’ pass muster because ‘monetary injury is a concrete harm sufficient for purposes of Article III standing.’” *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

67. Here, it is clear that Defendants’ failure to provide Plaintiff and Class Members with accurate wage statements entailed “concrete, downstream consequences” involving monetary injury. Had the time shaved hours been accurately reported for a given pay period, Defendants’ automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff’s and Class Members’ entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

68. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because “[b]enefits do

> not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

69. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

70. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

71. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary

> documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

72. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

73. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

74. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

75. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

76. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

77. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

78. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages, including minimum wages and overtime premiums, for all hours worked due to a policy of compensating employees at an improper fixed daily salary.

79. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Sub-collective Plaintiffs their properly owed commissions and wages for all hours they worked due to an unlawful commissions structure.

80. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

81. At all relevant times, Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their minimum wages and overtime premiums, when Defendants knew or should have known such was due.

82. At all relevant times, Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

83. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

84. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, unpaid commissions, and liquidated damages.

85. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

86. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

87. At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

88. At all relevant times, Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failing to pay minimum wages and overtime premiums for all hours worked due to their improper fixed daily salary policy.

89. At all relevant times, Defendants willfully violated Plaintiff's and Subclass Members' rights by subjecting them to a policy of failing to pay their properly owed commissions and wages for all hours worked due to their unlawful commissions structure.

90. At all relevant times, Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

91. At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of New York Labor Law § 195(1).

92. At all relevant times, Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

93. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid minimum wages, unpaid overtime wages and premiums, unpaid commissions, liquidated damages for unpaid wages and commissions, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid minimum wages, overtime wages, and overtime premiums, as a result of Defendants' improper fixed salary scheme, due under the FLSA and the NYLL;

d. An award of unpaid wages and unpaid commissions as a result of Defendants' unlawful commissions structure, due under the FLSA and the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with the WTPA's wage notice and wage statement requirements, due under the NYLL;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages and commissions pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages and commissions pursuant to the NYLL;

h. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

i. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

j. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class;

n. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 26, 2025
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*